NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JASON MCGEE,**

          **Plaintiff,**

**v.**                                        **Case No. 6:17-cv-906-Orl-40KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

          **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the Complaint filed by Plaintiff, Jason McGee, seeking review of the final decision of the Commissioner of Social Security denying her claim for social security benefits, Doc. No. 1, the answer and certified copy of the record before the Social Security Administration ("SSA"), Doc. Nos. 13, 15, and the parties' Joint Memorandum, Doc. No. 19.[1]

---

[1] In the Scheduling Order, I required counsel for the parties to submit a single, Joint Memorandum with an agreed statement of the pertinent facts in the record. Doc. No. 16. Counsel for Plaintiff was ordered to identify and frame, in a neutral fashion, each of the disputed issues raised as grounds for reversal and/or remand, and counsel for the Commissioner was required to respond to each of those issues in the format set forth in the Scheduling Order. *Id.* at 4.

NOT FOR PUBLICATION

## PROCEDURAL HISTORY.

In 2013, McGee filed applications for benefits under the Federal Old Age, Survivors and Disability Insurance Programs ("OASDI"), 42 U.S.C. § 401, *et seq.*, and under the Supplemental Security Income for the Aged, Blind and Disabled Program ("SSI"), 42 U.S.C. § 1381, *et seq.* He alleged that he became disabled on June 11, 2013. R. 248, 250.

After his applications were denied originally and on reconsideration, McGee asked for a hearing before an Administrative Law Judge ("ALJ"). R. 193. An ALJ held a hearing on July 31, 2015. McGee, accompanied by an attorney, and a vocational expert ("VE") testified at the hearing. R. 31-83.

After considering the hearing testimony and the evidence in the record, the ALJ issued a decision. R. 13-24. The ALJ found that McGee was insured under OASDI through March 31, 2016. R. 15. The ALJ determined that McGee had not engaged in substantial gainful activity since the alleged disability onset date. *Id.*

The ALJ found that McGee had the following severe impairments: a history of degenerative disc disease of the cervical spine, status post skull fracture, status post multiple fractures from a motorcycle accident and a history of some mild hearing loss in the right ear. *Id.* The ALJ determined that McGee did not have a severe mental impairment. R. 15-16. The ALJ concluded that McGee did not have an impairment or combination of impairments that met or equaled an impairment listed in SSA regulations. R. 16.

The ALJ found that McGee had the residual functional capacity ("RFC") to perform light work, as follows:

> [H]e can only use his upper extremities for the push/pull operation of arm/hand controls on an occasional basis but may use his lower extremities for the push/pull

operation of foot/pedal controls frequently; he can climb ramps and stairs occasionally but is precluded from climbing ropes, ladders and scaffolds; all other postural maneuvers can be performed occasionally; he can perform manipulative activities such as reaching, handling and fingering frequently but the claimant cannot reach overhead. He should not work in an extremely noisy work environment and should not work in proximity to dangerous moving machinery or industrial vibrations.

R. 17. In making this determination, the ALJ found that McGee's complaints of incontinence were not supported by credible medical evidence, R. 21, and he did not mention that McGee had any vision impairment. He also found that McGee's reports about the intensity, persistence and limiting effects of his symptoms were not entirely credible. R. 20.

The ALJ found that McGee could not perform his past work as a short order cook. R. 22. After considering the testimony of the VE, the ALJ concluded that McGee could perform light and sedentary, unskilled (SVP 2) work available in the national economy. R. 23. Therefore, the ALJ concluded that McGee was not disabled. R. 24.

McGee requested review of the ALJ's decision by the Appeals Council. R. 7. On March 23, 2017, the Appeals Council found no reason to review the ALJ's decision. R. 1-3.

McGee now seeks review of the final decision of the Commissioner by this Court.

## JURISDICTION AND STANDARD OF REVIEW.

McGee having exhausted his administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3). A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

NOT FOR PUBLICATION

## SUMMARY OF THE FACTS.

After a thorough review of the record, I find that the facts are generally adequately stated in the Joint Memorandum, which statement of facts I incorporate by reference. Accordingly, I will only summarize facts pertinent to the issues raised to protect McGee's privacy to the extent possible.

McGee was born in 1972. He obtained a GED. R. 34. He previously worked as a short-order cook, among other jobs. R. 36.

On June 11, 2013, he was in a motorcycle accident. R. 38. He suffered damage to the frontal lobe of his brain, damaged discs in his neck, and injured his shoulders and lower spine. R. 39. He was hospitalized and surgery was performed in Panama City, Florida, where he lived at the time. R. 39-40. Thereafter, he moved to Volusia County, Florida. R. 46. At the time of the ALJ's hearing, McGee testified that another surgery on his neck would be scheduled. R. 41.

At the time of the ALJ's hearing, McGee had Medicaid insurance, but he was not under treatment by a doctor. R. 51-52, 67. He testified that he had difficulty finding a doctor who would accept Medicaid. R. 68. The only medication he was taking was Keppra. R. 59.

McGee testified that he became dizzy with bending and standing back up. R. 61-62. He had neck pain that radiated down his back to his hip. It hurt to turn his head. He also had severe pain when he lifted his arms overhead and when picking something up. R. 62-63. He estimated that he could lift less than 10 pounds and that he could not lift anything above his shoulders. He could sit for 5 minutes before needing to change positions. R. 63-64. He estimated that he could walk about 2 blocks. R. 87. He testified that the spinal injury resulted in inability to control his bowels and that he had to use a bathroom frequently. R. 64.

NOT FOR PUBLICATION

McGee testified that in a typical day he moved from the bed to the living room. During the day, he would lie down frequently to take tension off his back and neck. He read and watched television. He could follow along with a movie but a few minutes after it was over, he could not remember the details. He testified that he did not cook, but at one point he stated that he could make simple meals. R. 57-58, 98. He tried to sweep, and he straightened pillows and washed a few dishes. He could not carry the laundry. R. 58, 87. He shopped using a motorized cart. R. 87. He could care for his personal hygiene. R. 87. He previously had an unrestricted driver's license, but it was suspended. R. 35.

Medical records confirm McGee's injuries as a result of the motorcycle accident. *E.g.,* R. 362-65. He suffered a right frontal, open, comminuted, contaminated, depressed multi-fragmented skull fracture, an orbital roof fracture, bilateral orbital rim fractures, right frontal contusions/intracerebral hematoma and a C7 fracture. R. 362. An MRI of the cervical spine taken on July 23, 2013 revealed multilevel degenerative disc and joint disease contributing to neural foraminal narrowing and central canal stenosis, mild at C3-4. R. 346. Surgeries were performed. *E.g.,* R. 375-81, 383, 460-62. Following the accident, McGee reported dizziness and neck pain. R. 358-59.

On January 27, 2014, Paul Tritsos, Psy.D., examined McGee at the request of the Office of Disability Determinations. McGee reported poor sleep, poor motivation, social withdrawal, irritability and poor focus. Dr. Tristos observed that McGee had a constricted affect and depressed mood, and his insight and judgment appeared to fair. Dr. Tristos also noted that McGee used a cane when walking. After administering psychological tests, Dr. Tritsos diagnosed a cognitive disorder NOS (provisional), and an adjustment disorder with depressed mood with a global

assessment of functioning ("GAF") score of 48. In terms of prognosis, Dr. Tritsos opined that McGee could handle activities of daily living and hygiene. He had levels of social withdrawal and trouble with concentration/attention which impacted his activities of daily living. Because it was less than one year since his injury, Dr. Tritsos did not know how much McGee would further recover. R. 491-92.

On January 28, 2014, Asim J. Khattak, M.D., conducted a disability examination of McGee. McGee reported that he was depressed because of his injury and chronic pain. He used a cane to avoid falls. He complained of dizziness off and on, insomnia and at times being unable to control his bowels. He indicated that he was not under treatment because he could not afford it. Upon examination, Dr. Khattak noted that McGee's vision was 20/50 in the left eye without glasses and 20/70 in the right eye. R. 494-94. "Visual fields by cross confrontation are grossly normal on the left but reduced laterally on the right." R. 494. Dr. Khattak observed a paravertebral muscle spasm in the thoracic spine and a straight-leg raising test was positive for pain on the right side. Motor strength was 5/5 in all extremities. McGee's gait was a little slow and wide based. He had reduced range of motion in his shoulder joints. Dr. Khattak opined that McGee would not be able to work in his present condition. R. 493-98.

On February 12, 2014, Lee Reback, Psy.D., prepared a mental functional capacity assessment after review of McGee's records. Dr. Reback concluded that McGee had an affective disorder. She opined that McGee would have mild limitations in activities of daily living and social functioning and moderate difficulties in maintaining concentration, persistence or pace. R. 97-98. Dr. Reback opined that McGee could understand and remember simple instructions. He could sustain an ordinary routine making simple decisions. He might have difficulty maintaining

attention and concentration for extended periods of time, possibly due to physical complaints. R. 103-07.

On April 12, 2014, Deborah Carter, Ph.D., prepared a mental functional capacity assessment based on review of the records. Dr. Carter also found that McGee had an affective disorder. R. 153. She summarized her opinions as follows:

> [D]espite moderate limitations in memory, concentration, persistence, pace, social and adaptive functioning, the claimant would be able to understand, retain, carry out simple instructions; perform routine tasks on sustained basis; cooperate with others in completing simple tasks; generally able to perform at least simple, repetitive tasks in more socially isolated settings.

R. 144.

On April 30, 2014, Edmund Molis, M.D., prepared a physical functional capacity assessment based on review of the record. He opined that McGee could lift/carry up to 20 pounds occasionally and 10 pounds frequently. He could stand/walk and sit about 6 hours each in an 8-hour workday. He could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders/ropes/scaffolds. He had limited ability to lift, including overhead. He had limited field of vision in the right eye. He should avoid concentrated exposure to vibration and even moderate exposure to hazards. R. 138-42.

McGee began treatment with Ramin Bonnet, D.O., on June 19, 2014. He indicated that he had been provided insurance a month earlier. He reported that his seizures were under control with Keppra. He complained of urinary and bowel incontinence, dizziness, ringing and chronic pain. After examination, Dr. Bonnet's impressions were urinary and bowel incontinence, severe tendonitis, left hearing loss, vertigo and dizziness. He recommended use of a doughnut and use of narcotic pain medication. R. 562. During a follow-up visit on July 3, 2014, McGee stated that he

had stopped taking Keppra because of dizziness. Dr. Bonnet recommended that McGee begin taking this medication again. R. 561.

On July 22, 2014, Ismail Zabih, M.D., examined McGee. McGee reported muscle weakness, stiffness and back and neck pain, and depression with anxiety, depressed mood and irritability. He denied vision change. Dr. Zabih observed a normal gait. His diagnoses were muscle spasm and depressive disorder. He prescribed Lexapro and Norco. R. 549-50.

On September 22, 2014, Mirza Beg, M.D., a neurologist, examined McGee. McGee reported dizziness and ringing in his left ear with hearing loss. He also complained of neck pain radiating into his shoulders and limitation of movement in his neck. He was taking hydrocodone-acetaminophen (Norco), Keppra and Lexapro. He also reported bowel incontinence. Upon examination, Dr. Beg observed moderately restricted range of motion in the neck. Dr. Beg also observed severe tenderness and guarding in the cervical and trapezius muscles with spasms in the cervical paraspinal muscles. Range of motion in the shoulders was full. Dr. Beg found 5/5 muscle strength in all extremities. McGee's attention and concentration were normal. Dr. Beg's assessments included chronic pain syndrome; depression; traumatic brain injury; hearing loss; bowel incontinence; and, cervical myelopathy. Dr. Beg ordered additional testing, and continued McGee on Keppra, Lexapro and Norco. R. 552-56.

During the hearing, the ALJ asked the VE to assume a hypothetical person of McGee's age, education and work experience with the RFC the ALJ assigned to McGee. R. 71-73. The VE testified that there were jobs available in the national economy that his person could perform. R. 73-76. The VE testified that these jobs would accommodate a sit/stand option. R. 76. The VE testified that bathroom breaks were tolerated so "long as it's not in a recurring day in, day out

event." R. 80. If the person were taking three extra bathroom breaks a day, that would "probably impact the being on task to the point to where they would be some type of correction by the employer . . . ." R. 81.

## ANALYSIS.

In the Joint Memorandum, which I have reviewed, McGee asserts three assignments of error. He contends that the ALJ erred by failing to discuss functional limitations arising from his incontinence and visual field impairment. He asserts that the ALJ erred in his consideration of his mental impairments. Finally, he argues that the ALJ did not articulate specific and adequate reasons to support his credibility finding. He asks that the final decision of the Commissioner be reversed and that the case be remanded for further proceedings. These are the only issues I will address.

*Incontinence and Vision Problems.*

McGee argues that the ALJ erred by failing to account for functional limitations arising from incontinence and vision limitations. The Commissioner contends that because diagnoses alone do not equate to functional limitations, the ALJ did not err.

In order to establish disability based on pain and other symptoms, a claimant must show evidence of an underlying medical condition that reasonably can be expected to give rise to the claimed pain or other symptoms. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002)(citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). McGee testified that his spinal injury resulted in inability to control his bowels, R. 64, but he points to no medical evidence supporting that testimony. Moreover, as the Commissioner argues, while some doctors credited McGee's complaints of bowel incontinence, it does not appear that any of them considered it severe

enough to warrant treatment. Therefore, the ALJ's conclusion that McGee's complaints of bowel incontinence are not supported by credible medical evidence in the file, R. 21, is supported by substantial evidence in the record.

As for McGee's vision impairment, Dr. Khattak determined that McGee had 20/70 vision reduced laterally in the right eye. The severity of this vision problem must be measured in terms of its effect upon McGee's ability to work, not simply deviation from the norm. *Owens v. Barnhart*, No. 8:05-cv-1399-T-EAJ, 2006 WL 4791709, at * 5 (M.D. Fla. Aug. 16, 2006). In this case, there is no evidence that this vision limitation would interfere with McGee's ability to work. Rather, McGee indicated that he was able to read and watch television despite his vision problems. He also had an unrestricted driver's license before it was suspended. Therefore, the record does not support a finding that the limited field of vision in McGee's left eye would affect his ability to work.

For these reasons, I recommend that the Court find that the first assignment of error is not meritorious.

*Mental Impairments*.

McGee contends that the opinions of Dr. Tritsos, Dr. Reback and Dr. Carter all support a finding that he had significant mental limitations. All three of these professionals opined that McGee had limitations in attention and concentration. Dr. Reback and Dr. Carter opined that despite moderate limitations in concentration, persistence or pace, McGee could understand, and remember simple instructions and sustain an ordinary routine making simple decisions. Despite the concurrence of these professionals regarding McGee's limitations in concentration, persistence

or pace, the ALJ found that McGee would have only mild difficulties in this area of functioning. McGee contends this conclusion was erroneous.

Although not clearly stated, it appears that counsel for McGee intended to argue that the ALJ's decision to give some to no weight to the opinions of the psychologists is not supported by substantial evidence in the record. In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1179 (11th Cir. 2011), the United States Court of Appeals for the Eleventh Circuit reiterated long-standing law in this circuit requiring an ALJ to "state with particularity the weight given to different medical opinions and the reasons therefor."

The ALJ stated that he gave no weight to Dr. Tritsos' opinion. R. 21. The ALJ found that Dr. Tritsos' conclusion was "completely inconsistent with other evidence of record, the failure of the claimant to pursue other psychiatric or mental health treatment or interventions and the observation of other examiners (Dr. Beg) that failed to note any signs of depression or memory issues." R. 21. Substantial evidence supports the ALJ's finding that McGee did not seek mental health treatment and that Dr. Beg did not note any signs or symptoms of depression.

However, the ALJ was not correct that Dr. Tritsos' opinion was completely inconsistent with other evidence in the record. Both Dr. Reback and Dr. Carter found that McGee would have moderate limitations in concentration, persistence or pace. Dr. Reback concluded that despite these limitations McGee could understand and remember simple instructions and sustain an ordinary routine making simple decisions. Dr. Carter opined that despite these limitations, McGee could understand, retain, carry out simple instructions and perform routine tasks on a sustained basis. The ALJ did not specifically mention Dr. Reback's opinion and he gave only some weight to Dr. Carter's opinion.

11

NOT FOR PUBLICATION

In the Joint Memorandum, counsel for the Commissioner did not address why the ALJ's failure to weigh the opinion of Dr. Reback should not result in reversal of the Commissioner's final decision. While the ALJ did cite activities of daily living in support of his finding that McGee would have only mild limitations in concentration, persistence and pace, R. 16, those findings do not satisfy the *Winschel* requirement that the ALJ state the weight given to each medical opinion and the reason therefor. *Winschel* is clear that when, as here, "the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,' we will decline to affirm 'simply because some rationale might have supported the ALJ's conclusion.'" 631 F.3d at 1179 (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam)).

For these reasons, I recommend that the Court find that the second assignment of error is well taken.

*Credibility*.

In the decision, the ALJ cited three reasons to support the credibility finding: (1) McGee's reports were not entirely consistent with the total medical and nonmedical evidence, including statements by McGee and others; (2) his reports were not consistent with his activities of daily living; and (3) his reports were not consistent with "alternations [*sic*] of usual behavior or habits." R. 20-21. McGee contends that these are not adequate reasons to support the finding that his reports of his limitations were not entirely credible as required by *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995).

With respect to the first factor, the ALJ correctly observed that there were large gaps in medical treatment, even after McGee received Medicaid insurance coverage. The ALJ also noted that despite McGee's testimony that he had never stopped taking medication (Keppra), Dr. Bonnet's

12

NOT FOR PUBLICATION

treatment notes reflect that McGee stated that he had stopped taking the medication due to dizziness (R. 561).[2] These reasons are, therefore, supported by substantial evidence in the record.

Other of the ALJ's reasons do not have record support. The ALJ cited lack of credible medical evidence to support McGee's complaints of depression and seizures among other problems. There is credible evidence of seizures, albeit controlled with Keppra. Additionally, all three psychologists who rendered mental functional capacity assessments concurred that McGee had an affective disorder, with Dr. Tritsos specially identifying an adjustment disorder with a depressed mood.

As for activities of daily living, SSA regulations require an ALJ to consider daily activities among other evidence in determining the claimant's ability to work. 20 C.F.R. § 404.1529(a); *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987). In this case, though, the ability to sweep, straighten pillows, cook simple meals and watch television, cited by the ALJ, provide little support for the conclusion that McGee could perform substantial gainful activities at a light exertional level.

Finally, it is not clear what the ALJ meant by the third factor, which I construe to mean alterations in usual behavior or habits. The ALJ did not provide examples to support this finding.

Because I recommend that the case be remanded for further proceedings regarding McGee's mental impairments, I recommend that the Court also require the Commissioner to reevaluate McGee's credibility on remand.

---

[2] Citation to Dr. Bonnet's treatment notes undermines counsel for McGee's argument that the ALJ "failed to actually cite a single piece of medical evidence when rejecting McGee's testimony." Doc. No. 19, at 24.

NOT FOR PUBLICATION

### RECOMMENDATION.

For the reasons stated above, I **RESPECTFULLY RECOMMEND** that the final decision of the Commissioner be **REVERSED** and that the case be **REMANDED** for further proceedings. I further **RECOMMEND** that the Court direct the Clerk of Court to issue a judgment consistent with its decision on this Report and Recommendation and, thereafter, to close the file.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

**Respectfully Recommended** this 6th day of June 2018.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE